NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0365n.06

No(s) 11-5388/5777

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>APR 4, 2012<br>LEONARD GREEN, Clerk |
|  | ) |  |
| *Plaintiff-Appellee*, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| MICHAEL CURRIER, aka Draulic, aka Big Mike; | ) | DISTRICT OF TENNESSEE |
| RALPH T. O'NEAL, III, aka Ralph O'Neal, III | ) |  |
|  | ) | O P I N I O N |
| *Defendants-Appellants*. | ) |  |

BEFORE:     COLE and McKEAGUE, Circuit Judges; ZATKOFF, District Judge.[*]

COLE, Circuit Judge. Defendants-Appellants Michael Currier and Ralph O'Neal, III appeal the convictions and sentences arising from their participation in a large-scale cocaine trafficking conspiracy. As neither Defendant raises a claim for which we can grant relief, we AFFIRM.

I. BACKGROUND

In 1998, law enforcement officers in Roane County, Tennessee began investigating O'Neal based on a suspicion that he was engaging in drug trafficking. The officers made a series of controlled purchases of crack cocaine as well as conducted a number of interviews of local drug dealers and customers, who all named O'Neal as the primary source of crack cocaine supply in Roane County. In one such interview, in 2003, federal and local law enforcement officers spoke

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

with Currier at the Fox Lake apartment he shared with O'Neal, and Currier admitted to selling crack cocaine he obtained from O'Neal. In 2008, Currier met with federal law enforcement officers and again admitted to receiving a supply of crack cocaine from O'Neal for resale.

In June 2008, following years of federal and local investigation, O'Neal was arrested and indicted by a federal grand jury with conspiring to distribute, and possess with intent to distribute, at least five grams of cocaine hydrochloride and fifty grams of cocaine base. The grand jury later returned a superseding indictment charging O'Neal with eleven counts: one count of conspiring to distribute, and possess with intent to distribute, at least five kilograms of cocaine hydrochloride and fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; two counts of aiding and abetting the distribution of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); four counts of distributing cocaine hydrochloride within 1,000 feet of a public elementary school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 860; and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The superseding indictment also charged Currier, Brandon Cooper, Demond Reed, and Randy Spears as co-conspirators in Count One—which charged a conspiracy to distribute, and possess with intent to distribute, five kilograms or more of cocaine hydrochloride and fifty or more grams of cocaine.

Currier and O'Neal were tried separately in the Eastern District of Tennessee and each was convicted of their charged offenses. The district court sentenced Currier, at the bottom of the applicable Guidelines range, to 292 months' imprisonment. The district court sentenced O'Neal to life imprisonment, based on the mandatory life sentence provision in 21 U.S.C. § 841(b)(1)(A) for defendants who have committed two or more prior felony drug offenses. Currier timely appealed,

raising three objections to his sentence: the district court's decision to hold him responsible for fifteen to fifty grams of cocaine, and the court's application of § 2D1.1(b)(1) and § 3B1.1 of the United States Sentencing Guidelines. Currier also appeals his conviction, alleging that the district court erred in admitting into evidence a July 2010 recorded telephone conversation between himself and O'Neal. Likewise, O'Neal timely appealed his conviction, raising a sufficiency-of-the-evidence claim, alleging the district court abused its discretion in dismissing O'Neal's pro se motions, and contesting the district court's failure to identify alternate jurors prior to jury deliberation. O'Neal also challenges his sentence and argues that § 841(b)(1)(A)'s mandatory life sentence violates the Fifth, Eighth, and Fourteenth Amendments.

## II. CURRIER'S CLAIMS

*A. Sentencing Based on Fifteen to Fifty Grams of Cocaine*

The district court found Currier responsible for fifteen to fifty kilograms of cocaine, and sentenced him according to the Guidelines range for that amount. Currier challenges this calculation and alleges that the district court erred in attributing this quantity of cocaine to his offense because it was not supported by the trial record. In calculating drug quantity for sentencing purposes, we have noted that "an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008).

"In reviewing a district court's application of the Sentencing Guidelines, this Court will accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the Guidelines to the facts." *United States v. Moon*,

513 F.3d 527, 539-40 (6th Cir. 2008) (alteration in original) (internal quotation marks and citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The district court based its factual determination on the trial testimony of witnesses Mandi Elliot, Jackie Miller, Brett Cummings, and Stacey Harvey as well as statements O'Neal made to law enforcement officers. Elliot testified that Currier traveled to both Tennessee and Texas two or three times a month to purchase cocaine, and that she had observed freezer bags of cocaine, stacks of money, and a safe in Currier's bedroom. She further testified that in 2002 and 2003 she saw at least four kilograms of cocaine in Currier's possession. Miller testified that, in December 2007, Currier recruited her to travel to Tennessee to pick up a kilogram of cocaine. She also testified that Currier told her that in 2007, he purchased a kilogram of cocaine in Texas. Cummings testified that, in 2007, he began selling cocaine he purchased from Currier, and that he had observed a kilogram of cocaine in Currier's apartment. Harvey testified that for ten years she sold drugs that Currier supplied, and that she had observed Currier use a "kilo press" to compress a brick of cocaine as well as freezer bags of cocaine in Currier's apartment at least two or three times per week.

The court also noted that O'Neal informed law enforcement officers that Currier purchased four ounces of cocaine per day for the length of the conspiracy, totaling roughly eighty-two to eighty-four kilograms. Currier alleges that the district court's consideration of O'Neal's out-of-court statement was an improper use of hearsay and a violation of the Confrontation Clause. The sentencing court is not, however, bound by the Federal Rules of Evidence, *United States v.*

*Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007), nor does the Confrontation Clause apply to sentencing proceedings, *id.* at 665. Rather, the Guidelines require that evidence introduced at sentencing meet a "minimum indicia-of-reliability." *Id.* at 658-59; *see* United States Sentencing Manuel § 6A1.3(a). Currier has not identified any unreliability in O'Neal's statement and, in fact, Currier's own statements to law enforcement officers in 2003 and 2008 corroborate the allegation that Currier regularly purchased cocaine from O'Neal. Currier objected to the admission of O'Neal's statement on the basis that it was made by a co-conspirator. We have expressly rejected the contention that "co-conspirator hearsay [is] inherently unreliable, . . . render[ing it] presumptively inadmissible at sentencing." *Moncivais*, 492 F.3d at 660. Therefore, after reviewing the evidence properly before the district court at sentencing, it cannot be said that the district court was clearly erroneous in attributing fifteen to fifty kilograms of cocaine to Currier's offense and sentencing him accordingly.

*B. District Court's Application of U.S.S.G. § 2D1.1(b)(1)*

Currier contends that the district court erred in its application of a two-level sentencing enhancement for the possession of "a dangerous weapon (including a firearm)" in connection with a drug offense. U.S.S.G. § 2D1.1(b)(1). The "district court's determination that the defendant possessed a firearm during a drug offense is a factual finding that this court reviews under the clearly erroneous standard." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quoting *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003)). The government bears the initial burden to demonstrate, by a preponderance of the evidence, that a defendant actually or constructively possessed a firearm. *Id.* Once the government meets this burden, it shifts to the defendant to

establish that it was "clearly improbable that the weapon was connected with the crime." *Id.* (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)).

In applying the § 2D1.1(b)(1) enhancement, the district court considered testimony from Elliot, Miller, Harvey, and Cummings regarding Currier's possession of a firearm. Elliot testified at trial that Currier kept several firearms in the bedroom where he stored cocaine. Miller testified that Currier had a pistol under his car seat during their trip to Tennessee to buy a kilogram of cocaine. Harvey testified that he observed various firearms in Currier's Fox Lake apartment. Cummings testified that he saw a firearm on Currier's night stand a couple of times. In light of this trial testimony and Currier's lack of evidence to disprove possession of a firearm during the drug offense, we are not "left with the definite and firm conviction," *U.S. Gypsum Co.*, 333 U.S. at 395, that the district court committed a mistake. Therefore, we do not find the district court's use of the § 2D1.1(b)(1) sentencing enhancement to be clearly erroneous.

*C. District Court's Application of U.S.S.G. § 3B1.1*

The district court applied a four-level enhancement to Currier's sentence under U.S.S.G. § 3B1.1 based on his role as an "organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). "A district court's legal conclusions are generally reviewed de novo, and its factual findings will not be set aside unless clearly erroneous." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). However, "[t]he standard that governs [this Court's] review of a sentencing enhancement for a leadership role under U.S.S.G. § 3B1.1 is not altogether clear," *id.*, because *Burford v. United States*, 532 U.S. 59, 66 (2001), urges appellate courts to review a district court's application of the Guidelines "deferentially rather than de novo 'in light of the fact-

bound nature of the legal decision.'" *Vazquez*, 560 F.3d at 473 (quoting *Burford*, 532 U.S. at 66.))

Nevertheless, we need not resolve which standard applies because we conclude that the leadership

adjustment was appropriate under either standard of review.

To qualify for this enhancement, the defendant need only organize, supervise, or lead one

other participant. *Id.* at cmt. n.2. Because the § 3B1.1 enhancement distinguishes between

defendants who are an "organizer or leader," who receive a four-level enhancement and defendants

who are "a manager or supervisor," who receive a three-level enhancement, the sentencing court

reviews a number of factors to determine which enhancement applies:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruit of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* at cmt. n.4.

The district court reviewed these factors and concluded that Currier qualified for the four-

level enhancement as an "organizer or leader." In doing so, the district court relied on trial testimony

indicating that Currier recruited at least one new member, directed Michelle Huskey to rent vehicles

in her name for his out-of-state trips to purchase drugs, fronted large quantities of cocaine to Miller

and Cummings for resale, and would receive the proceeds of the cocaine Cummings sold. Viewing

all of these facts together, the district court correctly concluded that Currier acted as an organizer or

leader in the conspiracy to possess with intent to distribute cocaine.

D. *Admission of the July 2010 Recorded Telephone Conversation*

Currier argues that the district court erred in denying his motion in limine to suppress his recorded telephone conversation with O'Neal. The recorded conversation at issue arose from Currier's visit to the Blount County Detention Center to speak with O'Neal following his arrest. It is undisputed that any statements Currier made during the conversation were admissible as an admission by a party opponent under Federal Rule of Evidence 801(d)(2). The sole issue is whether the district court properly admitted portions of the conversation containing O'Neal's statements. The district court denied the motion in limine, finding O'Neal's statements admissible under Rule 801(d)(2)(E) as statements made by a co-conspirator as well as admissible as non-hearsay statements to provide context to Currier's admissions admitted under Rule 801(d)(2). We review the district court's denial of a motion in limine for abuse of discretion, *United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011), and will "overturn a [district court's] ruling only if [we] find[] that the ruling was arbitrary, unjustifiable or clearly erroneous," *Plain Dealer Pub. Co. v. City of Lakewood*, 794 F.2d 1139, 1148 (6th Cir. 1986).

Currier alleges that O'Neal's statements cannot be admissible under Rule 801(d)(2)(E) because the statements were not made "during and in furtherance of the conspiracy," as the conversation occurred after the conclusion of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Currier further alleges that the district court erred in admitting O'Neal's statements, not for the truth of the matter asserted, but rather to provide context to Currier's admissions. *Cf. United States v. Townsend*, 206 F. App'x 444, 450 (6th Cir. 2006); *United States v. Stines*, 313 F.3d 912 (unpub. app'x) (6th Cir. 2002). This Court need not address the district court's Rule 801(d)(2)(E) and

801(d)(2)(A) analysis, as even if the admission of O'Neal's statements had been in error, that error would be harmless. We find harmless error when, "with fair assurance . . . [we conclude that] the judgment was not substantially swayed by the error . . . ." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *cf. United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) (applying this harmless error standard in a criminal case). A review of the recorded conversation reveals that the content of O'Neal's statements was not prejudicial to Currier, particularly in light of the substantial evidence of his guilt presented at trial. O'Neal's statements did not present novel information regarding the drug conspiracy that was not already admissible under Rule 801(d)(2)(A), such as Currier's own statements to law enforcement in 2003 and 2008 regarding his involvement with O'Neal and the resale of cocaine, or other witness and co-conspirator testimony. As the introduction of O'Neal's statements would be harmless error, if error at all, relief is not merited on this claim.

### III. O'NEAL'S CLAIMS

*A. Sufficiency of the Evidence*

O'Neal raises a sufficiency-of-the-evidence challenge to his conviction for conspiracy to distribute, and possess with intent to distribute, five kilograms or more of cocaine hydrochloride and fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. We find the evidence sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The "defendant claiming insufficiency of the evidence bears a very heavy burden," *United States v. White*, 492 F.3d 380, 393 (6th Cir. 2007), as we will reverse the "judgment

for insufficiency of the evidence only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole," *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (alteration in original) (internal quotation marks and citations omitted).

To convict for conspiracy under 21 U.S.C. § 846, "the government must [prove]: (1) an agreement to violate drug laws, in this case 21 U.S.C. §§ 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009). O'Neal contends that while the evidence may establish that he sold drugs to confidential informants, the government failed to prove the requisite agreement to conspire. The government need not adduce a formal, verbal agreement because a "tacit or material understanding among the parties will suffice." *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997) (internal quotation marks and citations omitted) Such an understanding may be gleaned from:

> Drug conspiracies often assume a vertical pattern of distribution, where each successive distributor sells a lower volume to any particular customer . . . . In a drug distribution "chain" conspiracy, it is enough to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy. Evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship, and the quantity of drugs may also support an inference of conspiracy.

*United States v. Robinson*, 547 F.3d 632, 641 (6th Cir. 2008) (internal citations and alterations omitted).

Here, the government presented testimony of co-conspirators from which the jury could reasonably find O'Neal guilty of conspiring to distribute, and possess with intent to distribute, five or more kilograms of cocaine hydrochloride and fifty grams or more of cocaine base. Co-conspirator

Cooper testified that during the seven-year conspiracy, O'Neal supplied him with roughly thirty kilograms of cocaine. The government introduced a recorded telephone conversation between O'Neal and Harvey, in which Harvey complained of being short changed during a controlled purchase. O'Neal blamed Cooper for the mistake and said that he was unsure whether he could trust Cooper anymore. Additionally, Drug Enforcement Special Agent James Blanton testified that O'Neal confessed to trafficking between twelve and seventeen kilograms of cocaine, which he obtained from multiple sources in multiple states. Given the co-conspirator testimony, recorded conversations of O'Neal's, and O'Neal's own confession, "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis omitted).

*B. Dismissal of O'Neal's Pro Se Motions*

O'Neal contends that the district court abused its discretion in dismissing many of his pretrial pro se motions as untimely, without considering their merits. Prior to trial, O'Neal filed a number of untimely motions, raising meritless arguments such as the Supreme Court's original jurisdiction in his criminal proceedings. Although "pleadings submitted pro se will be accorded a measure of leniency to assure that meritorious claims will not be dismissed for inartful draftsmanship," *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983), the district court's dismissal of untimely and meritless pretrial motions was within its discretion, as the decision was not "arbitrary, unjustifiable or clearly unreasonable," *Plain Dealer Pub. Co.*, 794 F.2d at 1148.

*C. District Court's Failure to Identify Alternate Jurors*

Following his conviction, O'Neal filed a motion for new trial, alleging a violation of Federal Rule of Criminal Procedure 24(c). O'Neal contends that the district court erred by failing to "ensure

that a retained alternate [juror] does not discuss the case with anyone until that alternate replaces a juror or is discharged." Fed. R. Crim. P. 24(c). The district court denied O'Neal's motion for new trial, finding no evidence of a Rule 24(c) violation. We review a district court's decision to deny a motion for a new trial for abuse of discretion. *United States v. Wettstain*, 618 F.3d 577, 590 (6th Cir. 2010).

The alleged error occurred when the district court charged the jury and instructed them to retire and deliberate on the verdict. Because the court had not previously designated which two of the fourteen jurors were alternates, all fourteen returned to the jury room to begin deliberations. After approximately ten minutes, the court recognized its error, removed the two alternate jurors and instructed them on their role as alternates. Once the alternate jurors were removed, the district court delivered the verdict form and trial exhibits to the jury in the deliberation room. The twelve jurors then returned to deliberate and subsequently reached a guilty verdict on all eleven counts.

The district court acknowledged its error, but concluded that the error did not warrant a new trial. Under these circumstances, the district court did not act arbitrarily in concluding that the alternate jurors' presence for the first ten minutes of deliberations, before the twelve non-alternate jurors received the verdict form or trial exhibits, was not grounds to grant a new trial. *See United States v. DeBoer*, 966 F.2d 1066 (6th Cir. 1992) (finding an alternate juror's presence in the deliberation room for approximately three minutes as the jury "select[ed] a foreman and commence[d] its deliberations" to be harmless).

*D. Constitutionality of Section 841(b)(1)(A) under the Fifth, Eighth, and Fourteenth Amendments*

O'Neal challenges the constitutionality of § 841(b)(1)(A)'s mandatory life sentence for defendants with two or more prior convictions for a felony drug offense, contending that it violates his Fourteenth Amendment right to due process, his Eighth Amendment right against cruel and unusual punishment, and his Fifth Amendment right against double jeopardy. We have previously considered and rejected all of O'Neal's arguments. In *United States v. Kelsor*, we reiterated our rejection of the "contention that the enhancement of a sentence under § 841(b) on the basis of prior felony drug convictions violates double jeopardy." 665 F.3d 684, 701 (6th Cir. 2011); *see also United States v. Pruitt*, 156 F.3d 638, 645-46 (6th Cir. 1998); *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998). Furthermore, our decision in *Kelsor* expressly rejected O'Neal's contention that § 841(b)(1)(A) is cruel and unusual punishment because the "imposition of a life sentence without parole for a third felony drug conviction is not 'grossly disproportionate' to the crime." 665 F.3d at 701; *see also United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994). Finally, we have found that the lack of discretion afforded to sentencing judges under § 841(b)(1)(A)'s mandatory life sentence requirement does not offend due process. *See United States v. Levy*, 904 F.2d 1026, 1034 (6th Cir. 1990) (rejecting defendant's argument that § 841(b)(1)(A) violates due process because it prevents consideration of mitigating evidence and individualized sentencing determinations).

## III. CONCLUSION

The Defendants' convictions and sentences are AFFIRMED.