[Cite as *State v. May*, 2014-Ohio-1542.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee              :           C.A. CASE NO.     25359

v.                                      :           T.C. NO.     11CR2051

DONNA L. MAY                            :           (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant             :

                                        :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ____11th____ day of ____April____, 2014.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W.
Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT L. MUES, Atty. Reg. No. 0017449 and A. MARK SEGRETI, JR., Atty. Reg. No.
0009106, 1105 Wilmington Avenue, Dayton, Ohio 45420
    Attorneys for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1} Donna L. May appeals from her convictions, after a jury trial, for operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them (with a prior OVI felony), harassment with bodily substance, and endangering children. The convictions were based on evidence that May had driven under the influence of alcohol while also taking Cymbalta®, that one of May's children (a toddler) was in the rear passenger seat while May was driving under the influence of alcohol and/or a drug of abuse, and that May had intentionally spat on a police officer during her detention in a police cruiser. The trial court sentenced May to an aggregate five-year prison term, a $1,500 mandatory fine, and a 20-year driver's license suspension.

{¶ 2} May's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating two potential assignments of error, namely that her OVI conviction was based on insufficient evidence and was against the manifest weight of the evidence. Upon our independent review of the record, pursuant to *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we concluded that the record revealed at least one potentially meritorious issue for review. The issue concerned whether the trial court properly instructed the jury regarding May's OVI charge. We appointed new appellate counsel.

{¶ 3} May, with new appellate counsel, now raises four assignments on appeal. For the following reasons, the trial court's prison sentence will be reversed, and the matter will be remanded for resentencing on that issue. In all other respects, the trial court's judgment will be affirmed.

## I. Lack of Limiting Instruction Regarding Prior Conviction

{¶ 4} May's first assignment of error states:

When a prior offense is admissible because it is an element of the substantive offense, due process requires that the trial court must instruct the jury that the jury may not consider the prior offense as proof of the charge in the indictment, and the failure to so instruct constitutes plain error. Alternatively, trial counsel was ineffective for failing to object or request a limiting instruction, denying Ms. May's right to effective counsel under the Sixth Amendment.

{¶ 5} A jury trial on May's charges was held in August 2012. During the trial, the State presented evidence, through Dayton Police Officer Derrick McDonald, that May had a 2008 OVI felony conviction in the Montgomery County Court of Common Pleas. McDonald had obtained certified copy of the termination entry for Case No. 2007 CR 3949, which identified Donna L. May as the defendant in the felony OVI case and provided May's birthday and social security number.

{¶ 6} May's sole defense witness was Joseph Hamilton, her former boyfriend and the father of some of her children. During his direct testimony, Hamilton discussed that May would be verbally abusive when she was angry. He also acknowledged that May drank beer and that he was aware of occasions when May had driven while drunk. On cross-examination, Hamilton stated that he knew of May's 2008 OVI felony conviction and that May often got angry when she drank. He reiterated that he had seen May drink and drive, and he did not think May "knew her limits about alcohol." On redirect examination, Hamilton indicated that May had cut back on her drinking after her prior OVI conviction, and that she did not drink or only drank a couple of beers if she had to work the next morning.

{¶ 7} In closing arguments, the State did not suggest to the jury that May's prior conviction made it more likely that she was guilty of the June 26 offense. The State argued:

> The final element, ladies and gentleman, of Count I is that the defendant was previously convicted of a felony, OVI in Case 2007 CR 3949 in the case of the State of Ohio versus Donna May. The entry reflecting that conviction has been admitted into evidence. Felony OVI conviction, wherein this defendant was found guilty. Mr. Hamilton confirmed that fact. But beyond Mr. Hamilton's confirmation, you have the personal identifying information of the defendant. That personal identifying information matches on State's Exhibit 3 and on State's Exhibit 2. And I urge you, during your deliberations to compare all the documents. There's no question, it's uncontroverted, it is undisputed that this defendant was convicted of a felony in that case. * * *

{¶ 8} Defense counsel acknowledged May's prior OVI conviction in her closing argument, but she argued that the State's evidence of May's behavior did not establish that she had driven under the influence of alcohol the day on which the current charge arose. The State's rebuttal argument emphasized May's erratic driving prior to the stop, the strong odor of an alcoholic beverage on May, her bloodshot eyes, her disheveled appearance, and her combative behavior. The prosecutor further stated:

> When we're talking about circumstantial evidence, look for the corroboration. Look for the facts that are also admitted by the defendant that support all the other testimony you heard, and the defendant pointed that out herself. Donna May admits to drinking. Officer Simpson smells the overwhelming odor of

alcohol. All of the facts fit together. There is no doubt that this defendant got behind the wheel of a car, had too much to drink, her driving suffered as a result. She's got a prior felony conviction for drinking and driving. Mr. Hamilton told you, she drinks a lot. Sometimes she doesn't know her limits. Sometimes she gets behind the wheel of a car. Count I has been proven to you beyond a reasonable doubt.

{¶ 9} "When a prior conviction determines the degree of an offense, rather than just enhancing the penalty, the prior conviction is not only admissible, but the state must prove it beyond a reasonable doubt." *State v. Bankston*, 2d Dist. Montgomery No. 24192, 2011-Ohio-6486, ¶ 23, citing *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987). However, the trial court did not instruct the jury that the evidence of May's past OVI conviction could only be used to establish that element of the instant OVI offense and could not be used to show that May acted in conformity with this past act on June 26, 2011, when she was stopped and arrested for the instant offenses. *See*, *e.g.*, 2 Ohio Jury Instructions-Criminal 401.25(4). Nor did defense counsel request such an instruction. In the absence of such a request by defense counsel, we are limited to determining whether the trial court's failure to sua sponte give such an instruction is plain error. *Bankston* at ¶ 23.

{¶ 10} Notice of plain error under Crim.R. 52(B) is "'to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *See State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error does not exist unless, but for the error, the outcome of the criminal proceedings

would clearly have been different. *State v. Nallen*, 2d Dist. Miami No. 2012 CA 24, 2013-Ohio-3284, ¶ 19.

{¶ 11} We have previously held that the failure of a trial court to give an unrequested limiting instruction for "other acts" evidence is not plain error. *Bankston* at ¶ 24; *State v. Moore*, 2d Dist. Greene No. 2010 CA 13, 2011-Ohio-636, ¶ 24. And a review of the testimony and closing arguments in this case reveals no plain error in the trial court's failure to provide sua sponte a limiting instruction.

{¶ 12} The prosecutor's case-in-chief addressed May's prior conviction solely through the testimony of Officer McDonald. McDonald testified that May had a prior OVI felony conviction, and he identified the termination entry in that prior case. The prosecutor's initial closing argument mentioned May's prior conviction only as an element of the State's case. May's drinking habits and prior conviction were discussed in Hamilton's testimony upon questioning by defense counsel, and defense counsel acknowledged the prior conviction in her closing argument. Defense counsel's primary arguments were that May had anger issues and that the "minor traffic infractions" did not establish that May was impaired. In its rebuttal closing argument, the State emphasized the need to consider the totality of the circumstances. The State mentioned May's prior conviction and Hamilton's testimony in its rebuttal closing argument, but those statements were in response to defense counsel's argument that the evidence did not support a conclusion that May had driven under the influence on June 26, 2011. The State's reference to the past conviction in its rebuttal was fleeting; the State did not argue that May's prior felony OVI conviction was proof that May had committed the June 26 offense.

{¶ 13} Moreover, there was substantial evidence that May had driven under the influence of alcohol and/or a drug of abuse on June 26, 2011. The State's evidence established that at approximately 5:50 p.m. on June 26, 2011, Officer Amy Simpson observed May driving on a residential road at what appeared to be above the posted 25 mile per hour speed limit. As Simpson watched, May made an "abrupt" and "very erratic" southbound turn without using her turn signal. Officer Simpson began to follow May. May turned on her left turn signal, but traveled several blocks without turning left. When May reached Third Street, which had a stop sign, she stopped with the "entire front half of her vehicle" out in the road, well past the stop sign. Officer Simpson stated that traffic on Third Street at that time of day is very heavy, and May's stop created a hazard. After turning onto Third Street, May crossed the center line three times, crossing "at least six inches into the lane slowly, and then * * * abruptly jerk back." Officer Simpson initiated a traffic stop.

{¶ 14} Upon approaching May's vehicle, Simpson immediately noticed an "extremely strong" odor of an alcoholic beverage. May's face was flushed, her hair was "messed up," her eyes were watering, she was sweating, and her speech was slurred when she spoke. May spoke aggressively with the officer when asked if anything was wrong, and she had trouble standing up when Simpson got her out of her car. Throughout the encounter, May was belligerent, combative, verbally abusive, and yelled obscenities. May's threats to kick out the cruiser's door and window led the officers to place a hobble on her, which restrained May's feet. While the hobble was being placed, May spat on another officer and herself (in an attempt to again spit on the officer), resulting in the decision to put

a spit hood on May.

{¶ 15}     Considering that the State predominantly used the prior conviction to prove only that May had a prior felony OVI conviction and that there was substantial other evidence that May drove under the influence on June 26, 2011, we cannot find that the outcome of May's trial would clearly have been different and that the lack of a limiting instruction amounted to plain error.

{¶ 16}     May further asserts that her trial counsel rendered ineffective assistance by failing to request a limiting instruction regarding her prior felony OVI conviction.

{¶ 17}     To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 18}     This court has repeatedly held that failing to request a limiting instruction concerning a prior conviction does not automatically constitute ineffective assistance of counsel. *State v. Barksdale*, 2d Dist. Montgomery No. 25320, 2013-Ohio-2926, ¶ 31; *Bankston*, 2d Dist. Montgomery No. 24192, 2011-Ohio-6486, at ¶ 28. "Courts have determined that 'debatable trial tactics do not constitute the ineffective assistance of counsel or plain error, and a competent attorney could reasonably choose not to seek a limiting

instruction as a matter of trial strategy in order not to highlight [a defendant's] prior convictions.'" *Bankston* at ¶ 28, citing *State v. Kinney*, 4th Dist. Ross No. 07CA2996, 2008-Ohio-4612. Moreover, based on the evidence, we cannot conclude that the outcome of May's trial would have been different.

{¶ 19} May's first assignment of error is overruled.

## II. Maximum sentence

{¶ 20} May's second assignment of error states:

If the jury's conviction under R.C. 4511.19(A)(1) is upheld, the trial court's failure to apply H.B. 86 to Ms. May resulted in a sentence that is contrary to law and void.

{¶ 21} May asserts that she was entitled to be sentenced under R.C. 2929.14(A)(3)(b), which sets a 36-month maximum prison term for a third-degree felony that is not otherwise enumerated in R.C. 2929.14(A)(3)(a). May asserts that the maximum five-year penalty in R.C. 4511.19 is irreconcilable with R.C. 2929.14(A)(3) and that R.C. 2929.14(A)(3) should have governed. May relies on *State v. Owen*, 2013-Ohio-2824, 995 N.E.2d 911 (11th Dist.), which held:

It cannot be disputed that these two statutes are in irreconcilable conflict since the maximum sentence authorized for a third degree felony OVI under R.C. 4511.19(G)(1)(e) is five years, while the maximum sentence allowed for third-degree felonies, other than those listed in R.C. 2929.14(A)(3)(a), is three years. Since these statutes are in conflict and both are specific in nature, we hold that, pursuant to R.C. 1.52, the later enacted statute, i.e. R.C.

2929.14(A)(3), prevails over R.C. 4511.19(G)(1)(e)(ii).

*Owen* at ¶ 29.

**{¶ 22}** May was convicted of violating R.C. 4511.19(A)(1)(a), which prohibits a person from driving a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them." A trial court is required to sentence such an offender under R.C. Chapter 2929, except as otherwise authorized or required by R.C. 4511.19(G)(1)(a) to (e). R.C. 4511.19(G)(1).

**{¶ 23}** Both at the time of May's offense and now, a violation of R.C. 4511.19(A)(1)(a) is a third-degree felony if the offender has previously been convicted of a felony OVI. R.C. 4511.19(G)(1)(e). Under R.C. 4511.19(G)(1)(e)(i), the trial court is required to impose either (1) a mandatory prison term of one, two, three, four, or five years, in accordance with R.C. 2929.13(G)(2), if the offender also is convicted of or also pleads guilty to the specification in R.C. 2941.1413, or (2) a mandatory prison term of 60 consecutive days, in accordance with R.C. 2929.13(G)(2), if the offender is not convicted of and does not plead guilty to that specification. The court may impose a prison term in addition to the mandatory prison term, however the cumulative total of a 60-day mandatory prison term and the additional prison term for the offense may not exceed five years. R.C. 4511.19(G)(1)(e)(i). The court may also sentence the offender to a community control sanction. *Id.*

**{¶ 24}** Although the jury found that May had previously committed a felony OVI offense, the jury did not make (and was not asked to make) a finding under R.C. 2941.1413 that May, "within twenty years of the offense, previously has been convicted of or pleaded

guilty to five or more equivalent offenses." Accordingly, under R.C. 4511.19(G)(1)(e)(i), the trial court was required to impose a 60-day mandatory prison term, and it had the discretion to impose an additional prison term, with a maximum aggregate sentence of five years.

{¶ 25} R.C. 2929.13 also describes the penalties for a third-degree felony OVI offense. R.C. 2929.13(G) provides that if an offender is being sentenced for a third-degree felony OVI offense, the court shall impose upon the offender a mandatory prison term, as follows:

(2) If the offender is being sentenced for a third degree felony OVI offense * * *, the court shall impose upon the offender a mandatory prison term of one, two, three, four, or five years if the offender also is convicted of or also pleads guilty to a specification of the type described in [R.C.] 2941.1413 * * * or shall impose upon the offender a mandatory prison term of sixty days or one hundred twenty days as specified in [R.C. 4511.19 (G)(1)(d) or (e)] * * * if the offender has not been convicted of and has not pleaded guilty to a specification of that type. * * *

R.C. 2929.13(A) further states that if the offender is being sentenced for a third-degree felony OVI offense, in addition to the mandatory prison term required by R.C. 2929.13(G)(1) or (2), the court may impose "an additional prison term *as described in division (B)(4) of section 2929.14 of the Revised Code* or a community control sanction as described in division (G)(2) of this section."

{¶ 26} : H.B. 86 revised the prison terms for third-degree felonies, as set forth in

R.C. 2929.14. For certain stated third-degree felonies (which do not include violations of R.C. 4511.19), the prison term may be 12, 18, 24, 30, 36, 42, 48, 54, or 60 months. R.C. 2929.14(A)(3)(a). For all other third-degree felonies, the prison term may be 9, 12, 18, 24, 30, or 36 months. R.C. 2929.14(A)(3)(b). Thus, May's third-degree OVI felony was subject to a maximum of 36 months in prison. R.C. 2929.14(A)(3)(b).

{¶ 27} R.C. 2929.14(B)(4), which was referenced in R.C. 2929.13(A), specifically addresses third-degree felony OVI sentencing. It provides:

> If the offender is being sentenced for a third or fourth degree felony OVI offense under division (G)(2) of section 2929.13 of the Revised Code, the sentencing court shall impose upon the offender a mandatory prison term in accordance with that division. In addition to the mandatory prison term, * * * if the offender is being sentenced for a third degree felony OVI offense, the sentencing court may sentence the offender to an additional prison term *of any duration specified in division (A)(3) of this section.* In either case, the additional prison term imposed shall be reduced by the sixty or one hundred twenty days imposed upon the offender as the mandatory prison term. The total of the additional prison term imposed under division (B)(4) of this section plus the sixty or one hundred twenty days imposed as the mandatory prison term * * * shall equal *one of the authorized prison terms specified in division (A)(3) of this section for a third degree felony OVI offense.* * * *.

(Emphasis added.)

{¶ 28} The State argues that R.C. 2929.14(B)(4) permits the trial court to impose a

maximum sentence of five years for a third-degree felony OVI offense, because the statute states that the additional prison term may be any duration stated in R.C. 2929.14(A)(3), including those mentioned in R.C. 2929.14(A)(3)(a). This reading of R.C. 2929.14(B)(4) is inconsistent with the provision's additional term that the total prison term must equal one of the authorized prison terms specified in R.C. 2929.14(A)(3) "for a third-degree felony OVI offense." The permissible sentencing terms for a third-degree OVI felony are set forth in R.C. 2929.14(A)(3)(b), and the maximum sentence for that offense is 36 months, not five years, in prison.

{¶ 29} Stated simply, under 4511.19(G)(1)(e)(i), the trial court has discretion to impose an additional prison term for a third-degree felony OVI offense, with a maximum aggregate sentence of five years. However, under R.C. 2929.13(A) and R.C. 2929.14(B)(4), the maximum aggregate sentence for a third-degree felony OVI offense is 36 months. We agree with the Eleventh District that these provisions present an irreconcilable conflict and that the recent changes and more lenient provisions in R.C. Chapter 2929 must prevail. *Owen*, 2013-Ohio-2824, 995 N.E.2d 911 (11th Dist.); R.C. 1.52.

{¶ 30} May's second assignment of error is sustained.

### III. R.C. 2921.38(B) is Constitutional

{¶ 31} May's third assignment of error states:

Properly construed, R.C. 2921.38(B) does not apply to harmless spit. If it does, R.C. 2921.38(B) is unconstitutional on its face as overly broad and/or as applied to Appellant in this case where the spitting was expressive conduct protected by the First Amendment to the U.S. Constitution, Art.I, Ohio

Const.

{¶ 32}   In her third assignment of error, May challenges the constitutionality of R.C. 2921.38(B), which provides: "No person, with intent to harass, annoy, threaten, or alarm a law enforcement officer, shall cause or attempt to cause the law enforcement officer to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the law enforcement officer, by expelling the bodily substance upon the law enforcement officer, or in any other manner."   May contends that spit is harmless and that R.C. 2921.38(B) is overbroad if it prohibits harmless conduct, such as spitting.   May further asserts that her spitting was protected under the First Amendment as an expression of her frustration and dissatisfaction with her arrest and treatment by the police.

{¶ 33}   As an initial matter, May failed to raise her constitutional challenges in the trial court.   "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue."   *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus, quoted by *In re I.A.*, 2d Dist. Montgomery No. 25078, 2012-Ohio-4973, ¶ 4.   However, an appellate court may elect to consider waived constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.   *In re I.A.* at ¶ 4; *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988).

{¶ 34}   Even if we were to consider May's constitutional arguments, we would find they lack merit.   Legislative enactments enjoy a strong presumption of constitutionality, and they will be upheld unless proven, beyond a reasonable doubt, to be unconstitutional.   *State*

*v. Romage*, Slip Op. No. 2014-Ohio-783, ¶ 7.

**{¶ 35}** To demonstrate facial overbreadth, the party challenging the law must show that the statute's potential application reaches a significant amount of constitutionally protected activity. *Romage* at ¶ 8; *State v. Winston*, 2d Dist. Montgomery No. 23897, 2010-Ohio-5381, ¶ 9. "In considering an overbreadth challenge, the court must decide 'whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.'" *Akron v. Rowland*, 67 Ohio St.3d 374, 387, 618 N.E.2d 138 (1993), quoting *Grayned v. Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

**{¶ 36}** "[C]riminal statutes 'that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application.'" *Id*., quoting *Houston v. Hill*, 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410 (1987). A defendant may challenge a statute as being facially overbroad in violation of the First Amendment "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the required narrow specificity." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 49.

**{¶ 37}** In *State v. Hammond*, 2d Dist. Montgomery No. 24664, 2012-Ohio-419, we held that R.C. 2921.38(B) was not unconstitutionally vague. We rejected the defendant's argument that R.C. 2921.38(B) forced her to guess whether the "other bodily substance" it covers is saliva. We read R.C. 2921.38(B) to mean that the legislature used the word

"another" indefinitely, as a catch-all, to mean "any other." *Hammond* at ¶ 9. With that interpretation, we found that the statute was not unconstitutionally vague, and we upheld Hammond's conviction for harassment with a bodily substance based on Hammond's spitting on a police officer.

{¶ 38}   May asserts that R.C. 2921.38(B) criminalizes "expelling a bodily substance that is inherently threatening to the police officer." She relies on the doctrine of ejusdem generis to argue that "another bodily substance" must be of the same kind as blood, semen, urine, and feces (substances identified in the statute), all of which she asserts are inherently threatening because they contain infectious bacteria or dangerous viruses. May argues that, on its face, R.C. 2921.38(B) is overbroad because it otherwise covers saliva and other non-inherently threatening bodily substances, such as eyelashes, skin, hair, and ear wax. May asserts that her spitting on the officer was an expression of frustration, which was protected under the First Amendment.

{¶ 39}   We reject May's suggestion that R.C. 2921.38(B) is constitutionally overbroad. The language of the statute reflects an intent to prohibit harassment of a law enforcement officer by means of bodily substances. On its face, the statute does not require physical harm to the officer, and we glean no legislative intent to limit R.C. 2921.38(B) to bodily substances that may arguably cause physical harm. Moreover, we disagree with May's suggestion that an individual, such as May, has a First Amendment right to throw, expel, or otherwise cause another person to come into contact with that individual's bodily substances when the intent is to harass, annoy, threaten, or alarm the other person.

{¶ 40}   May's third assignment of error is overruled.

### IV. Jury Instruction Regarding Drug of Abuse

**{¶ 41}** May's fourth assignment of error states:

The trial court erred and/or abused its discretion, denying Appellant a fair

trial by failing to require that the State prove that her driving was impaired by

the combination of alcohol consumed and taking the prescribed medication.

**{¶ 42}** In her fourth assignment of error, May claims that the trial court erred in instructing the jury that Cymbalta is a drug of abuse and that she could be found guilty of driving under the influence of a drug of abuse when there was no evidence that May's taking of the prescription drug caused any impairment.

**{¶ 43}** Before the court instructed the jury, defense counsel objected to the trial court's inclusion of the phrase "drug of abuse, or a combination of them" in its definition of the OVI charge. Defense counsel argued that while May admitted to using Cymbalta with alcohol, there was no evidence about the effects of Cymbalta. The trial court rejected defense counsel's objection and instructed the jury that, before finding May guilty of OVI, it must find beyond a reasonable doubt that May "did operate any vehicle within the State of Ohio when at the time of the operation the Defendant was under the influence of alcohol, a drug of abuse, or a combination of them * * *." The court instructed the jury that Cymbalta is a "drug of abuse."

**{¶ 44}** A "drug of abuse" means "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes." R.C. 4511.181(E); R.C. 4506.01(L). A "dangerous drug" includes

any drug which may be dispensed only upon a prescription. R.C. 4729.01(F)(1)(a) and (b).

**{¶ 45}** May correctly argues that R.C. 4511.19(A)(1)(a) requires the State "to do more than prove impairment in a vacuum." *Cleveland v. Turner*, 8th Dist. Cuyahoga No. 99183, 2013-Ohio-3145, ¶ 13. For example, in *Turner*, the Eighth District reversed a defendant's conviction for driving under the influence where there was evidence that the driver was impaired, but there was no evidence that the driver had ingested alcohol or a drug of abuse. *Id.* (insufficient evidence that defendant ingested drug of abuse where no drugs were found and defendant did not identify the medication he may have taken).

**{¶ 46}** We agree with May that, when a prosecution under R.C. 4511.19(A)(1)(a) is based on driving under the influence of medication, the State must do more than simply present evidence that the defendant has taken the medication and shows signs of impairment. The United States Food and Drug Administration has approved more than a thousand prescription drugs (which are "drugs of abuse" under Ohio law), all of which may have any number of different side effects. *See* Full FDA Prescription Drug List, http://www.medilexicon.com/drugsearch.php?z=true (accessed Mar. 10, 2014); Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm (accessed Mar. 10, 2014). Not all side effects involve the impairment of judgment or reflexes. Although some medications may be familiar to some jurors, the various physiological effects of different medications is outside the common knowledge of most jurors and many trial judges.

**{¶ 47}** The essence of R.C. 4511.19(A)(1)(a) is to prohibit impaired driving while under the influence. It is certainly not intended to criminalize the operation of a vehicle by

a person taking a cholesterol or blood pressure medication, let alone an anti-narcoleptic or ADHD prescription, unless that drug negatively influences the defendant's driving abilities. And in many situations, especially those involving prescription drugs, this can only be proved by direct testimony linking the influence of the drug to the driving. This could be established through the testimony of an expert who is familiar with the potential side effects of the medication, or perhaps of a layperson (such as a friend or family member) who witnessed the effect of the particular drug on the defendant-driver.

{¶ 48} We therefore conclude that, in order to establish a violation of R.C. 4511.19(A)(1)(a) based on medication, the State must also present some evidence (1) of how the particular medication actually affects the defendant, *see State v. Sheppeard*, 2d Dist. Clark No. 2012 CA 27, 2013-Ohio-812, ¶ 55 (defendant and his wife testified that defendant took Ambien® to help him sleep), and/or (2) that the particular medication has the potential to impair a person's judgment or reflexes. Without that information, the jury has no means to evaluate whether the defendant's apparent impairment was due to his or her being under the influence of that medication.[1]

{¶ 49} We emphasize that the State is not required to support its case under R.C. 4511.19(A)(1)(a) with evidence of the exact amount of alcohol or the drug of abuse that was consumed or ingested by the defendant. It is often the case that, upon initiating a traffic stop, a police officer detects an odor of an alcoholic beverage on the driver and there is no available evidence as to the exact amount that the defendant consumed. However, as noted

---

[1] This requirement does not extend to violations of R.C. 4511.19(A)(1)(b)-(j), since these are per se violations based on the legislature's implicit determinations that specific concentrations of specific drugs negatively influence driving.

by the Ohio Supreme Court, "almost any lay witness, without having any special qualifications, can testify as to whether a person was intoxicated." *Columbus v. Mullins*, 162 Ohio St. 419, 421, 123 N.E.2d 422 (1954)*; see also State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19; *State v. Delong*, 5th Dist. Fairfield No. 02CA35, 2002-Ohio-5289, ¶ 60.  In all cases, a jury must determine, based on totality of the evidence, whether the defendant was driving under the influence of alcohol and/or a drug of abuse.

{¶ 50}  In this case, May admitted to Officer McDonald that she had drunk two 16-ounce Milwaukee's Best Lite beer and that she took 60 mg of Cymbalta for pain and depression.  There was no evidence in the record that Cymbalta is a prescription drug, of how Cymbalta affected May, or that Cymbalta alone or in conjunction with alcohol could cause May's judgment or reflexes to be impaired.  Accordingly, there was insufficient evidence to support a finding that May was driving under the influence of a drug of abuse (Cymbalta), alone or in combination with alcohol (beer).  Accordingly, the trial court erred when it instructed the jury that Cymbalta was a drug of abuse and that before finding May guilty of OVI, it must find beyond a reasonable doubt that May operated a vehicle while under the influence of "alcohol, a drug of abuse, or a combination of them."

{¶ 51}  The State argues that since there was overwhelming evidence that May was driving under the influence of alcohol, any error in instructing the jury regarding the influence of Cymbalta alone or in combination with alcohol was harmless.  The State contends that since May could not have been convicted of driving under the influence of a drug of abuse, its mention was superfluous in a statute that contains the disjunctive "or." May suggests, on the other hand, that the court's instruction that Cymbalta was a drug of

abuse might have led the jury to speculate that May had driven under the influence of Cymbalta and to convict her on that basis.

{¶ 52} The essential concept of R.C. 4511.19(A)(1)(a) is a prohibition of the act of operating a vehicle while being negatively influenced by some substance (as opposed to, for example, a mental or physical condition). Thus, pursuant to *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, the jury does not have to necessarily be unanimous as to the means (i.e., alcohol, a drug, or a combination of them) by which the offense was committed.

{¶ 53} Federal courts have held that when a jury is instructed as to multiple means by which the offense was committed, one of which is invalid, a general verdict of conviction is not automatically set aside due to the erroneous instruction. *Hedgpeth v. Pulido*, 555 U.S. 57, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008). *See also State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 48 (addressing an error in the indictment of one possible underlying offense). Rather, the error is considered under a harmless error analysis. *Id*. For example, in *State v. Donovan*, Case Nos. 11-1843, 11-2055, 11-2163, 11-2450, 539 Fed.Appx. 648, 653 (6th Cir. Sept. 9, 2013), one co-defendant argued that his conviction for conspiracy to distribute controlled substances should be reversed, because the trial court erroneously instructed the jury that Viagra® was a controlled substance. The trial court found the erroneous instruction to be harmless, stating:

Although the jury instructions incorrectly stated that Viagra is a controlled substance, they also correctly stated that marijuana, cocaine, ecstacy, and Vicodin are controlled substances. Thus, if the jury convicted

[co-defendant] of conspiring to distribute any of these, his conviction should stand. Under this analysis, [co-defendant's] argument fails because, as explained above, he was not implicated by the evidence presented at trial regarding Viagra. He does not identify one instance at trial where evidence connected him to the trafficking of Viagra. Rather, evidence concerning [his] participation in the * * * conspiracy focused only on marijuana and cocaine. For these reasons, the instruction, while erroneous, does not warrant reversal of his convictions.

*Id*. at 653. *Compare U.S. v. Kurlemann*, 736 F.3d 439 (6th Cir.2013) (jury instruction erroneously allowing "half-truths" as an alternative means of violating false statements statute was not harmless where that theory was "front and center" during the trial, including closing arguments).

{¶ 54} Under the particular facts of this case, we conclude that the trial court's erroneous instructions regarding Cymbalta was harmless. The State presented overwhelming evidence that May drove her vehicle while under the influence of alcohol. May's driving was erratic prior to the traffic stop, and her appearance, her combative and disruptive behavior toward the officers, her refusal to take sobriety tests, and the "exceedingly strong" odor of an alcoholic beverage all indicated that May was driving under the influence of alcohol. May admitted to the police that she had consumed two 16-ounce beers. In addition, the testimony and counsels' arguments did not emphasize the consumption of a drug of abuse. The State's opening and closing arguments did not mention Cymbalta; instead, the State repeatedly asserted that the evidence established that

May had driven under the influence of alcohol. Accordingly, we conclude that, although the trial court should have excluded "drug of abuse" and Cymbalta from its jury instructions, the inclusion of those instructions did not affect May's conviction under R.C. 4511.19(A)(1)(a). Any error in the court's jury instructions was harmless beyond a reasonable doubt.

{¶ 55} May's fourth assignment of error is overruled.

## V. Conclusion

{¶ 56} The trial court's prison sentence will be reversed and the matter will be remanded for resentencing on that issue. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., concurring:

{¶ 57} I agree with the disposition of the assignments of error in this appeal. I write separately to express my disagreement with the following sentence: "We agree with [appellant] that, when a prosecution under R.C. 4511.19(A)(1)(a) is based on driving under the influence of medication, the State must do more than simply present evidence that the defendant has taken the medication and shows signs of impairment." (supra ¶ 46). And I disagree with the determination that "in order to establish a violation of R.C. 4511.19(A)(1)(a) based on medication, the State must also present some evidence (1) of how the particular medication actually affects the defendant * * * and/or (2) that the particular medication has the potential to impair a person's judgment or reflexes." (supra ¶ 48). Neither

comment is necessary to our disposition of this case because we conclude that "[t]he State presented overwhelming evidence that May drove her vehicle while under the influence of alcohol." (supra ¶ 54). With that conclusion, discussion of the evidence required to show impairment by medicine or drugs is dicta. Moreover, I don't agree with either quoted statement. It just depends.

**{¶ 58}** For purposes of this discussion, I recognize that the term "medication" is used in ¶ 46 and ¶ 48, but the legal standard for sufficiency applies to any "drug of abuse," which includes "any controlled substance, dangerous drug * * * , or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes." R.C. 4506.01(L). In my view, all that is necessary is evidence that the offender consumed a drug and that his or her faculties were appreciably impaired:

> In order to prove that appellant was under the influence of a drug of abuse, appellee was required to prove that appellant's "faculties were appreciably impaired" by the consumption of a drug of abuse. *State v. Lowman* (1992), 82 Ohio App.3d 831, 836. In the prosecution of an offense under this provision, the amount of a substance in the appellant's body is only of secondary interest. See *City of Newark v. Lewis* (1988), 40 Ohio St.3d 100, 104. "It is the behavior of the defendant which is the crucial issue. * * * The test results [of presence of a drug in blood], if probative, are merely considered in addition to all other evidence of impaired driving in a prosecution for this offense."

*State v. Dixon*, 12th Dist. Clermont No. CA2001-01-012, 2007-Ohio-5189 ¶ 15.

{¶ 59} In *Dixon*, the evidence was found to be sufficient where the defendant exhibited clues of impairment on two admissible field-sobriety tests, he had bloodshot eyes, an officer discovered marijuana on the defendant's person, and laboratory results of a urine sample indicated that the defendant had consumed marijuana. The evidence was sufficient even though no expert evidence was submitted by the State to correlate the amount of metabolite with timing of ingestion or a level of impairment. Other cases supporting this notion include *State v. Dearth*, 4th Dist. Ross No. 09CA3122, 2010-Ohio-1847 (finding that evidence was sufficient where trooper observed defendant drive off the roadway, his eyes were glassy and bloodshot, trooper detected strong odor of burnt marijuana from the vehicle and defendant, and defendant performed badly on various physical-coordination tests) and *State v. Strebler*, 9th Dist Summit No. 23003, 2006-Ohio-5711 (finding sufficient evidence where a lay witness observed the defendant with difficulty walking, fumbling with his keys, mumbled speech and cloudy eyes; deputy encountered the defendant at a local store appearing disoriented with bloodshot eyes and difficulty producing his license; the defendant indicated he was using prescription methadone, produced a prescription bottle, performed badly on field-sobriety tests, and urine tested positive for methadone although there was no determination of what level). We also previously addressed the issue in *State v. Gilleland*, 2d Dist. Champaign No. 2004 CA 1, 2005-Ohio-0659. There an officer observed the defendant driving erratically. Gilleland was described as "disoriented and having glassy eyes and a demeanor which indicated he was under the influence of drugs." *Id.* at ¶ 19. "[N]umerous empty or near empty bottles of prescription drugs" that had been filled that day were found

in his car.[2] *Id.* at ¶ 2. Gilleland argued that without a blood test or the performance of field-sobriety tests there was insufficient evidence offered from which a jury could conclude he was guilty. We disagreed. We did not adopt a rule that evidence of the drugs' ability to impair was necessary.

{¶ 60} A different result is appropriate where there is no evidence about what, if any, drug, medicine, or substance the defendant consumed no matter how impaired. In *State v. Collins*, 9th Dist Wayne No. 11CA0027, 2012-Ohio-2236, officers testified at length regarding Collins' impaired condition and gave their respective opinions that he was under the influence of *some* sort of illegal narcotic or drug. But there was no evidence that he had ingested any particular drug, medicine, or substance. Accordingly, the court found the evidence insufficient.

{¶ 61} When prosecuting a case of impairment by a drug of uncertain or debatable ability to impair one's faculties, it might behoove the State to present some evidence of the drug's influence on human functionality. But we should not endorse a blanket rule on the subject when the issue is not before us.

{¶ 62} With the exceptions I have noted, I concur.


Copies mailed to:

Andrew T. French
Robert L. Mues
A. Mark Segreti, Jr.
Hon. Barbara P. Gorman

---

[2] We did not identify the nature of the drugs in our opinion, and we therefore do not know whether such evidence was presented in the trial.