[Cite as *Chillicothe v. Lunsford*, 2015-Ohio-4779.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| CITY OF CHILLICOTHE/<br>STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 15CA3481 |
| | : | |
| v. | : | |
| | : | |
| MARK R. LUNSFORD, | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendant-Appellee. | : | |
| | : | **RELEASED: 11/16/2015** |

_____

APPEARANCES:[1]

Sherri K. Rutherford, Chillicothe City Law Director, and Pamela C. Wells, Assistant City Law Director, Chillicothe, Ohio for appellant.

_____

Harsha, J.

{¶1}    The state charged Mark R. Lunsford with operating a motor vehicle under the influence of a drug of abuse, operating a vehicle while under the influence while possessing a commercial driver's license, and a marked lane violation. At trial the State presented evidence of Lunsfords erratic driving and his admission that he had taken Lortab and Xanax, which are prescription drugs, either the evening before or the following morning prior to operating his semi-truck. The trial court found Lunsford guilty of the marked lane violation, but granted Lunsford's Crim.R. 29(A) motion for an acquittal on the charges of operating a motor vehicle under the influence. The trial court ruled that the state failed to provide sufficient evidence that there was a nexus between

---

[1] Appellee Mark R. Lunsford did not participate in the appeal.

Lunsford's ingestion of prescription drugs and his impaired driving.

{¶2}   We granted the state's motion for leave to appeal.  The state contends that the trial court erred as a matter of law in granting Lunsford's Crim.R. 29 motion. According to the state the court misapplied our holding in *State v. Husted,* 2014-Ohio-4978, 23 N.E.3d 253 (4th Dist.) by requiring the state to present evidence of a nexus between the consumption of prescription drugs and his impairment.  The state argues that it is legally sufficient to show that the driver ingested prescription drugs and was impaired, i.e. there is no requirement to show that the drug ingested has a potential to impair a person's judgment or reflexes. However, the state's proposition is incorrect.

{¶3}   Because the trial court correctly applied the law in deciding Lunsford's Crim.R. 29(A) motion, we affirm the trial court's judgment.

I. ASSIGNMENT OF ERROR

{¶4}   The state raises one assignment of error:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S RULE 29 MOTION.

II. LAW AND ANALYSIS

A.     State's Appeal and our Standard of Review

{¶5}   A directed verdict of acquittal in a criminal case is a "final verdict" within the meaning of R.C. 2945.67(A) and cannot be appealed.  *State v. Hampton*, 124 Ohio St. 3d 447, 2012-Ohio-5688, 983 N.E.2d 324. *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990). However, under R.C. 2945.67(A), a court of appeals has discretion to review the rulings of substantive law that result in a judgment of acquittal as long as the judgment itself is not appealed. *State v. Bistricky*, *supra*, syllabus; *State v. Angel*, 4th

Dist. Gallia App. No. 91CA29, 1992 WL 79573 (April 14, 1992); *State v. Untied,* 8th Dist. Cuyahoga App. No. 100880, 2014-Ohio-3920.  We review questions of law under a de novo standard of review. *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259 (4th Dist.).

{¶6}   We grated the state leave to appeal the trial court's ruling that the state must prove a "nexus" between the drug ingested and the impairment in order to establish a violation of R.C. 4511.19(A)(1)(a), which prohibits the operation of a vehicle when under the influence of a drug of abuse. The trial court found that the state had established that Lunsford was impaired and that he had ingested two prescription drugs, which were identified as "scheduled substances,"  But it also found that the state failed to present evidence of the effect those drugs have on a person's judgment or reflexes or how those drugs may have affected Lunsford. The trial court cited our decision in *Husted, supra,* as requiring this "nexus" in order to support a conviction for driving under the influence of a drug of abuse.

B.      *State v. Husted* and the Nexus Requirement

{¶7}   In *Husted* the defendant faced a charge of physical control of a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.194(B)(1). Husted was asleep and parked at a gas station/convenience store when a police officer awoke her and noted that she had very slurred speech, red, bloodshot eyes and was unsteady on her feet.  Husted admitted to snorting drugs, but there was no evidence of what drug Husted had snorted or whether

the drug constituted a drug of abuse. The state did not obtain a urine or blood test. Husted moved for an acquittal under Crim.R. 29(A), which the trial court overruled.

{¶8}    We held that the trial court erred in denying Husted's Crim.R. 29 motion for judgment of acquittal, finding that the General Assembly requires some evidence "to establish a nexus between the defendant's impaired condition and any type of drug abuse." *Husted,* 2014-Ohio-4978 at ¶15. In cases where there is evidence that the defendant has consumed drugs, there must be some evidence that the drug consumed "has the potential to impair a person's judgment or reflexes." *Husted* at ¶ 21. *See also, State v. Richardson,* 2015-Ohio-757, 29 N.E.3d 354 (2nd Dist.)(defendant admitted to taking pain medication containing hydrocodone and acetaminophen, but state failed to present evidence of what the possible side effects of the pain medication typically might be); *State v. May,* 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶ 48 (defendant admitted to taking the prescription drug Cymbalta, but state offered no evidence of the potential effects Cymbalta has on judgment or reflexes). It is not enough to show that the defendant consumed a "controlled substance," or a "dangerous drug." The state must show that the drug consumed is one "that can result in impairment of judgment or reflexes." See, R.C. 4506.01(M).

{¶9}    Prescription drugs are "dangerous drugs" as defined in R.C. 4729.01(F). Thus, if the state were required to prove only that the defendant has consumed a prescription drug without also having to show that the prescription drug impairs judgment or reflexes, then a person taking any type of prescription medication who is impaired while driving, would be guilty of violating R.C. 4511.19(A)(1)(a) regardless of

whether the prescription drug caused the impairment. We rejected this in *Husted,* citing

*State v. May,* 2nd Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶47, appeal not

allowed, 140 Ohio St.3d 1498, 2014-Ohio-4845, 18 N.E.3d 1252. We held that there

must be some "evidence how the unspecified drug actually affects a person *** or that

the particular drug has the potential to impair a person's judgment or reflexes." *Husted*

at ¶ 21.

> [W]hen a prosecution under R.C. 4511.19(A)(1)(a) is based on driving
> under the influence of medication, the State must do more than simply
> present evidence that the defendant has taken the medication and shows
> signs of impairment. The United States Food and Drug Administration has
> approved more than a thousand prescription drugs (which are "drugs of
> abuse" under Ohio law), all of which may have any number of different
> side effects. * * * Not all side effects involve the impairment of judgment or
> reflexes. Although some medication may be familiar to some of the jurors,
> the various physiological effects of different medications is (sic) outside
> the common knowledge of most jurors and many trial judges.

*State v. May*, 2014-Ohio-1542 at ¶46.

{¶10} The state argues that our decision in *Husted* conflicts with an earlier

decision in *State v. Stephenson* 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, which

involved a conviction for operating a vehicle under the influence of a drug of abuse. In

*Stephenson*, the defendant appealed the trial court's conviction as against the manifest

weight of the evidence in light of his alternative explanation for his erratic driving.

Stephenson did not argue that the state failed to present evidence that morphine or

methadone has the potential to impair a person's judgment or reflexes. Instead, his

argument was based on his testimony that his impairment was actually caused by

various medical conditions, including lupus, hypertension and hyperthyroidism. Because

the question of whether the state provided evidence that morphine or methadone

impairs a judgment or reflexes was not at issue, the decision neither discusses it nor, as the state argues, does it stand for the proposition that the state need not show a nexus between a drug and the defendant's impairment.  Thus, *Stephenson* is distinguishable.

### C.     Applying *Husted*

{¶11}  Therefore, in cases in which the state relies upon some evidence that the defendant consumed prescription drugs, the state must also present some evidence of how the particular medicine actually affects a person or that the drug has the potential to impair a person's judgment or reflexes. *Husted* at ¶ 21.

> The essence of R.C. 4511.19(A)(1)(a) is to prohibit impaired driving while under the influence. It is certainly not intended to criminalize the operation of a vehicle by a person taking a cholesterol or blood pressure medication, let alone an anti-narcoleptic or ADHD prescription, unless that drug negatively influences the defendant's driving abilities. And in many situations, especially those involving prescription drugs, this can only be proved by direct testimony linking the influence of the drug to the driving. This could be established through the testimony of an expert who is familiar with the potential side effects of the medication, or perhaps of a layperson (such as a friend or family member) who witnessed the effect of the particular drug on the defendant-driver.

*State v. May*, at ¶ 47.

{¶12}  Here, the state presented the testimony of two witnesses: Trooper Holbrook, who stopped Lunsford, performed the field sobriety tests, and took him back to the state highway patrol post, and Trooper Craft who conducted an investigation at the post. Trooper Holbrook testified that Lunsford was impaired and had failed several field sobriety tests along the side of the highway. A breathalyzer test showed that Lunsford had no alcohol in his system.  Trooper Craft testified that by the time he had arrived at the post and conducted his examination at 4:30 p.m., three and a half hours after the initial traffic stop, Lunsford appeared very tired, worn out, with droopy eyelids

and slow, slurred, raspy speech. Craft testified that he conducted several tests to detect impairment and Lunsford did not perform well. Craft testified that he asked Lunsford to rank his level of impairment from one to ten, with one being not impaired and ten being completely impaired; Lunsford told Craft that he was about a five or a six on the scale of impairment, probably should not have been driving that day and apologized. Thus, the state presented ample evidence that Lunsford was driving while impaired.

{¶13} The state also provided evidence that Lunsford ingested prescription drugs, though there was some conflicting testimony about when he ingested them. Trooper Holbrook testified that Lunsford told him he had prescriptions for medications, including Xanax and Lortab and that Lunsford's doctor had told Lunsford that the only medication he should not drive after taking was Xanax. Lunsford told Holbrook that the Xanax was prescribed for panic attacks and that he would not take Xanax and drive. According to Holbrook, Lunsford told him that he had taken his Xanax mediation the previous evening at approximately 11 p.m. before going to bed. Holbrook testified that based on the information given to him by Lunsford, the Xanax mediation would have been taken about 13 hours before the traffic stop, which occurred at approximately 1 p.m. the following afternoon. Holbrook also testified that Lunsford said he had snorted two Lortab pills the night before driving, but Holbrook did not know what kind of drug Lortab is.

**{¶14}** Trooper Craft testified that Lortab and Xanax are scheduled substances. He stated that Lunsford indicated he snorts his medication at night because he has a difficult time with anxiety and depression and needs the mediation to help him sleep.

**{¶15}** However, Craft testified that he believed Lunsford admitted that he snorted a Lortab at seven in the morning the day of the traffic stop.

**{¶16}** Trooper Craft provided the state's only evidence about the nature of the prescription drugs, stating that Lortab was a schedule three drug and Xanax was a central nervous system depressant drug and a schedule four drug. However, Craft did not testify about any constituent contained in Lortab or Xanax or whether either of the drugs had the potential to impair judgment or reflexes.

**{¶17}** The state did not offer any evidence of what types of constituent substances Xanax and Lortab contain, the strength level of either of the prescriptions, the quantity of Xanax Lunsford may have ingested the evening before the stop, or any evidence about the effects of these medications on judgment or reflexes. The only testimony about either of the medication effects came from statement's Lunsford made at the time of his arrest, when he told Trooper Holbrook that he was prescribed Xanax after a severe anxiety attack. Lunsford stated that his doctor told him not to take it and drive. And Lunsford told both Trooper Holbrook and Trooper Craft that he did not take Xanax before driving, but instead had taken it the evening before. Though Lunsford's statements about Xanax provide evidence of the type of medical condition Xanax is used to treat, it provides no evidence of the side effects Xanax has on a person or

whether it typically impairs a person's judgment or reflexes for the period of time at issue in the case.

**{¶18}** The state could have introduced expert testimony to identify the substances contained in Xanax or Lortab and to testify about their effect on judgment and reflexes. Or it could have introduced testimony from a lay witness who had personal knowledge about how the medication has affected Lunsford in the past. But it did not. Because the state's witnesses testified that Lunsford was cooperating and voluntarily trying to produce a urine sample without success, the state could have asked Lunsford to voluntarily provide a blood sample or, if he refused, sought a search warrant to obtain a blood sample. See, R.C. 4511.19(D)(1)(a). But it did not.

**{¶19}** The trial court correctly ruled that the state must establish a nexus between the defendant's impaired condition and any type of drug of abuse as an element of proof. The state failed to identify the constituent drugs contained in Xanax and Lortab and whether they have the potential to impair a person's judgment or reflexes.  As a result the state failed to establish the required nexus between Lunsford's impaired state and his ingestion of the prescription medication.

D.      Distinguishing Alcohol Impairment

**{¶20}** It is important to note that this case does not involve the consumption of alcohol.  Lay persons are familiar with alcohol and its effects, in various quantities, on judgment and reflexes.  As stated by the Supreme Court of Ohio, "intoxication is probably one of the most familiar subjects of nonexpert evidence, and almost any lay witness, without having any special qualifications, can testify as to whether a person

was intoxicated." *Columbus v. Mullins,* 162 Ohio St. 419, 421, 123 N.E.2d 422 (1954); *See also State v. Richardson*, 2nd Dist. Montgomery, 2015-Ohio-757, 29 N.E.3d 354, ¶ 18, quoting *State v. May, supra.* Instead, this case involves only the question of impairment by a prescription medication. A lay person may have some familiarity with some prescription medications, but "the various physiological effects of different medications [are] outside the common knowledge of most jurors and many trial judges" or, in this case, the arresting officer. *Richardson* at ¶ 18.

### E.     Beyond Our Jurisdiction

**{¶21}** Finally, the state argues that if we affirm the trial court's substantive ruling on the applicable legal standard and determine that *May, supra*, provides the correct law, we should still find the court erred in granting the Crim.R. 29 motion. The state contends that the trial court erred in determining that the state failed to show a nexus between the Lortab and the impairment. However, this argument goes beyond the scope permissible on appeal. The state has no right to have the order of acquittal reviewed. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 16. The trial court's determination of the sufficiency of the evidence and ultimate judgment of acquittal is a "final verdict" as that term is defined in R.C. 2945.67(A) and cannot be appealed as a matter of right or by leave of the court. Therefore we have no jurisdiction to consider it. *Id.* at ¶ 17.

### III. CONCLUSION

**{¶22}** Based on the same evidentiary requirements set forth in *Husted* and discussed in detail in *May* and *Richardson*, the trial court correctly required the state to

show a nexus between the drug ingested and the impairment suffered. When prosecuting a charge of driving under the influence of a drug of abuse, the state must present some evidence of how the particular medication actually affects the defendant or that the particular medication has the potential to impair a person's judgment or reflexes.  We affirm the trial court's substantive legal ruling on the necessary elements for a conviction under R.C. 4511.19(A)(1)(a)..

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J.:  Concurs in Judgment and Opinion.
McFarland, A.J.:  Dissents.


For the Court


BY: _____
William H. Harsha, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**