O’Neill, J.,
dissenting.
{¶ 23} I must respectfully dissent. For a defendant to be found guilty of operating a vehicle while under the influence (“OYI”) of a drug of abuse, there *561 must be evidence that the defendant was under the influence of a drug of abuse and that the effects of that drug are consistent with the behavior of the defendant at the time of the alleged offense. The Second District Court of Appeals held that there was no evidence to connect the use by appellee, Clinton Richardson, of hydrocodone acetaminophen to his impairment at the time of the accident. 2015-Ohio-757, 29 N.E.3d 354, ¶ 27.
{¶ 24} When a drug of abuse is at issue, in order to prove OVI under R.C. 4511.19(A), the state must prove that (1) the drug of abuse “influence[d]” the defendant while (2) the defendant was operating a vehicle. By its plain meaning, the statute imparts the idea of causation between use of the drug and the impairment. To violate the statute, one must be influenced, and it must be the drug of abuse doing the influencing. Here we have a case in which the judge as fact-finder had some reason to infer that Richardson had taken a drug of abuse and that he was acting impaired, but there was no evidence to suggest that it was the drug of abuse that caused the observed indications of impairment.
{¶ 25} In this regard, this case is no different than any other criminal case in Ohio; the state has the burden of establishing every element of the crime with which the defendant is charged. See R.C. 2901.05(A). Here, the prosecution failed to present any evidence that Richardson’s behavior, as witnessed by the driver of the stopped vehicle whom he rear-ended and by the responding officer, was due to Richardson’s being under the influence of a drug of abuse. Impairment alone, no matter how severe it may be, is simply not a crime. There were numerous possible causes of the impairment, including the withdrawal theory offered by the defense which, unlike the state’s theory, was actually supported by expert testimony.
{¶ 26} This case was decided on the sufficiency of the evidence. It is well established that the relevant question when the sufficiency of the evidence is challenged is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” (Emphasis sic.) Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This court has stated: “With respect to sufficiency of the evidence, ‘ “sufficiency” is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.’ ” State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black’s Law Dictionary 1433 (6th Ed.1990).
{¶ 27} Reviewing the evidence presented at trial, it was undisputed that Richardson was acting unusually at the scene of the accident. Nobody denies that. The prosecution’s theory was that he was under the influence of hydroco-done at that time. This was based, in part, on Richardson’s admission at the *562 scene that he “was on pain medication” at the time. The problem with that theory is that there was no evidence that the pain medication that Richardson referred to was hydrocodone. It could have been the recommended dosage of Advil, Motrin, or any other over-the-counter pain medication. See R.C. 4506.01(M) (defining “drug of abuse” as “any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes”). Richardson testified that he had last taken hydrocodone over 48 hours before the accident. Absent expert testimony that hydrocodone continues to effect bodily functions for more than 48 hours, there was no evidence that the narcotic was causing or influencing the behavior exhibited. Richardson’s behavior could have been caused by some undiagnosed medical condition.
{¶ 28} In fact, Richardson testified that a possible reason he hit the stopped vehicle was that he fell asleep behind the wheel. Further, he outlined the side effects he had been experiencing from withdrawal from hydrocodone acetaminophen as he had run out of the medication two days earlier. Those side effects, which included drowsiness, were consistent with the behavior that he exhibited shortly after the crash.
{¶ 29} At trial, Richardson presented the expert testimony of Dr. Charles Russell, who stated that in his medical opinion, the behavior exhibited by Richardson was completely consistent with someone going through withdrawal from hydrocodone, and not with someone being under the influence of hydroco-done. Oddly, the prosecution presented no expert testimony but, instead, relied solely on the testimony of the driver of the stopped vehicle and the responding officer. Not only was neither of them an expert in the area of side effects of medications, but they did not even testify as lay witnesses that there was a connection between the use of hydrocodone and the behavior being exhibited by Richardson. Without having shown this link, the prosecution completely failed to establish an element of the crime charged. In fact, the only expert testimony presented supported the conclusion that the behavior exhibited by Richardson was not consistent with someone who had recently taken hydrocodone but, instead, led to the conclusion that Richardson was experiencing hydrocodone withdrawal, exactly as he had stated.
{¶ 30} Clearly, R.C. 4511.19(A) is intended to prevent impaired individuals from operating motor vehicles on roads and highways for the safety of everyone who uses those roads and highways. It is not intended to blindly prohibit or criminalize the operation of a motor vehicle by someone who takes routine over-the-counter medications that do not negatively affect a person’s ability to safely drive a vehicle. When a drug of abuse is at issue, to convict a defendant of OVI, *563 the state must show that the defendant was under the influence of a drug of abuse that impaired the defendant’s ability to safely operate a motor vehicle. That simply did not happen in this case. The prosecution fell woefully short of establishing all the elements of the OYI offense.
{¶ 31} In State v. May, 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, 2014 WL 1419568, the Second District addressed this exact issue. It stated:
[W]hen a prosecution under R.C. 4511.19(A)(1)(a) is based on driving under the influence of medication, the State must do more than simply present evidence that the defendant has taken the medication and shows signs of impairment. * * *
The essence of R.C. 4511.19(A)(1)(a) is to prohibit impaired driving while under the influence. It is certainly not intended to criminalize the operation of a vehicle by a person taking a cholesterol or blood pressure medication, let alone an anti-narcoleptic or ADHD prescription, unless that drug negatively influences the defendant’s driving abilities. And in many situations, especially those involving prescription drugs, this can only be proved by direct testimony linking the influence of the drug to the driving. This could be established through the testimony of an expert who is familiar with the potential side effects of the medication, or perhaps of a layperson (such as a friend or family member) who witnessed the effect of the particular drug on the defendant-driver.
May at ¶ 46-47.
{¶ 32} Simply stated, for a defendant to be found guilty of operating a vehicle while under the influence of a drug of abuse, there must be evidence of the connection between the drug used and the behavior exhibited. The only scientific evidence presented at trial was that the symptoms exhibited were consistent with withdrawal from hydrocodone, and that testimony was consistent with the responding officer’s observations. No rational trier of fact could have found, beyond a reasonable doubt, that Richardson was driving under the influence of hydrocodone at the time of the accident and that it was the effects of hydroco-done that caused his impairment. Not a single witness testified as to the effects of hydrocodone or that those effects were consistent with Richardson’s behavior. This was the missing link in this case.
{¶ 33} We are violating 200 years of jurisprudence by permitting a lay person to give an expert opinion without qualification. Surely the responding officer was qualified to testify as to what he saw. But under no circumstances was he qualified to testify as to (1) the pharmacology of hydrocodone or (2) how that drug affected this defendant on that day. In an OVI case involving alcohol, *564 would this majority affirm an OVI conviction based on a responding officer’s testimony that “well, he looked like he was over the limit to me” based only on behavior observed by the officer? No.
Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram and Christina E. Mahy, Assistant Prosecuting Attorneys, for appellant.
Arnold & Arnold, Ltd., Adam J. Arnold, and Kristin L. Arnold, for appellee.
{¶ 34} I must dissent.
Pfeifer, J., concurs in the foregoing opinion.